NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2432-12T3

E&J EQUITIES, LLC,
a New Jersey limited
liability company,

    Plaintiff-Respondent,

v.

BOARD OF ADJUSTMENT OF
THE TOWNSHIP OF FRANKLIN,

    Defendant-Respondent,

and

TOWNSHIP OF FRANKLIN,

    Defendant-Appellant.

---

> **APPROVED FOR PUBLICATION**
>
> **October 17, 2014**
>
> **APPELLATE DIVISION**

---

Submitted March 4, 2014 — Decided October 17, 2014

Before Judges Fisher, Espinosa and Koblitz.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1526-10.

DeCotiis, FitzPatrick & Cole, LLP, attorneys for appellant (Louis N. Rainone, of counsel; Jason D. Attwood and Victoria A. Flynn, on the briefs).

Francis P. Linnus Law Office, attorneys for respondent E&J Equities, LLC (Mr. Linnus, of counsel; Benjamin T. Wetzel, on the brief).

Respondent Board of Adjustment of the Township of Franklin has not filed a brief.

The opinion of the court was delivered by

ESPINOSA, J.A.D.

Concerned that inconsistencies in its regulation of billboards exposed it to possible legal liability, defendant Township of Franklin (the Township) began a two-year process to adopt a new ordinance. During that deliberative process, the Planning Board (the Board) considered whether to permit digital multiple message billboards, receiving information from plaintiff E&J Equities (E&J) and other sources. Concluding that a determination whether to permit a digital billboard was best made within the context of an application for a conditional variance, the Board proposed and the Township adopted Ordinance No. 3875-10 (the Ordinance), which prohibited such billboards.[1] After E&J's application for a variance to erect an electronic billboard was denied, it commenced this litigation, challenging the constitutionality of the Ordinance and the denial of its application for a variance.

---

[1] Various terms, such as digital, LED, electronic, multi-message, and Commercial Electronic Variable Message Signs (CEVMS), are used to describe the nature of the billboards subject to the Ordinance's prohibition.

A-2432-12T3

The trial court affirmed the denial of the variance, finding the Township's decision to deny E&J's application was not arbitrary, capricious or unreasonable. The court also rejected E&J's equal protection argument. But, relying upon language in Bell v. Township of Stafford, 110 N.J. 384 (1988), the trial court found the Ordinance's ban violated the First Amendment. The sole issue presented by the Township's appeal is whether the Ordinance's ban on digital billboards passes constitutional muster. For the reasons that follow, we conclude that it does.

I

"[T]he right to free speech is not absolute and is subject to reasonable limitations." Besler v. Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist., 201 N.J. 544, 570-71 (2010). In Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S. Ct. 2882, 69 L. Ed. 2d 800 (1981), the Supreme Court acknowledged the challenge of "applying the broad principles of the First Amendment to unique forums of expression," stating, "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method." Id. at 500-01, 101 S. Ct. at 2889, 69 L. Ed. 2d at 810-11 (quoting Kovacs v. Cooper, 336 U.S. 77, 97, 69 S. Ct. 448, 459, 93 L. Ed. 2d 513, 528 (1949) (Jackson, J.,

concurring)). Like the Court in <u>Metromedia</u>, "[w]e deal here with the law of billboards." <u>Id.</u> at 501, 101 <u>S. Ct.</u> at 2889, 69 <u>L. Ed.</u> 2d at 811.

Signs "pose distinctive problems that are subject to municipalities' police powers." <u>City of Ladue v. Gilleo</u>, 512 <u>U.S.</u> 43, 48, 114 <u>S. Ct.</u> 2038, 2041, 129 <u>L. Ed.</u> 2d 36, 42 (1994). "Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." <u>Id.</u> at 48, 114 <u>S. Ct.</u> at 2041, 129 <u>L. Ed.</u> 2d at 42-43. Accordingly, billboards are the subject of federal, state and local regulation.

Consistent with the Supreme Court's observation regarding the nature of signs, both Congress[2] and our Legislature[3] have

---

[2] In enacting the Federal Highway Beautification Act, 23 <u>U.S.C.A.</u> 131, Congress declared its finding that

> the erection and maintenance of outdoor advertising signs, displays, and devices in areas adjacent to the Interstate System and the primary system should be controlled in order to protect the public investment in such highways, <u>to promote the safety and recreational value of public travel, and to preserve natural beauty.</u>
>
> [23 <u>U.S.C.A.</u> § 131(a) (emphasis added).]

identified the promotion of safety on the highways and the preservation of natural beauty as interests to be served in their regulation of billboards.

All roadside signs in New Jersey are subject to conditions and restrictions established by N.J.S.A. 27:5-9. "Off-premise multiple message signs," such as the one E&J sought to erect, are subject to additional conditions. N.J.A.C. 16:41C-8.8(a)(1) requires an application and a permit specific to that use when the off-premise multiple message sign would be visible to a highway. The regulation states that, provided the conditions

(continued)

[3] The Legislature described its purpose in enacting the Roadside Sign Control and Outdoor Advertising Act (Roadside Sign Act), N.J.S.A. 27:5-5 to -28, as follows:

> In order to balance the promotion of the safety, convenience and enjoyment of travel on the highways of this State with the protection of the recreational value and public investment therein, to preserve and enhance the natural scenic beauty and aesthetic features of the highways and adjacent areas while promoting development and economic vitality and facilitating the flow of speech and expression, of which providing messages of commercial, public and social value conveyed through the medium of roadside signs and outdoor advertising is an important part, roadside signs and outdoor advertising shall be regulated by this act.
>
> [N.J.S.A. 27:5-6(a) (emphasis added).]

enumerated in N.J.A.C. 16:41C-8.8(a) are met, the Department of Transportation (NJDOT) "shall grant permission" for the use. Because N.J.S.A. 27:5-9.1 provides that, after NJDOT issues the permit, any billboard "to be erected on or above any State right-of-way . . . shall be subject to local government zoning ordinances[,]" it is evident N.J.A.C. 16:41C-8.8(a) establishes threshold requirements that must be satisfied without limiting the authority of local government to further regulate billboards. We therefore turn to the Township's effort to do so.

II

In February 2008, the Board began the process of revamping the Township's regulation of billboards by authorizing the Zoning Officer to prepare a draft billboard ordinance. Over the following year, the drafting of the Ordinance was a matter of discussion at the Board's meetings. Input was received from both the Land Use and Open Space Committee and the Township's Environmental Commission. Plaintiff engaged actively in the deliberative process, appearing before the Board to discuss a lighting study supporting its position that LED lighting was appropriate, and even submitting a suggested ordinance for the Board's consideration.

Minutes and memoranda from the various meetings reflect the Board's consideration of digital billboards and the impact of the size and placement of billboards along Interstate 287 (I-287) upon driver safety, as well as the Environmental Commission's concerns regarding the glare from billboards onto residential properties and that billboards not be visible from residential properties. At the direction of the Land Use and Open Space Committee, the draft ordinance was revised to include a ban on variable message and electronic signage throughout the Township. One memo noted the draft ordinance's "rather unique requirement," reducing the maximum distance of billboards from the highway, which was intended to reduce overall tree removal and the likelihood that billboards would be visible from local roadways.

In January 2009, Mark Healey, the Township's Director of Planning, reported to the Board regarding: his survey of existing billboards; potentially acceptable locations along Route 27 and I-287; and potential location, bulk, and design requirements. Healey recommended against allowing billboards on Route 27 because most of the area under consideration there had been developed and placement in front of existing businesses "would significantly detract from community character." He advised further that if the Board wanted to consider locations

on Route 27, a few commercially zoned locations might be appropriate because "they are either undeveloped or have features (e.g., transmission tower or industrial use) that already detract from the aesthetics of the area." As to potential design restrictions, the memo recommended against permitting billboards to "rotate, move, produce noise or smoke, give the illusion of movement, display video or other changing imagery, automatically change or be animated or blinking."

The Board submitted a draft zoning ordinance to the Mayor and Council in April 2009. The accompanying memo reports that the Board "spent four worksession meetings on the proposed ordinance and did a field visit to assess potential impacts." The Board determined that permitting billboards along I-287 would be the most appropriate means of addressing potential First Amendment claims on the part of billboard companies. The memo discussed the Board's reasoning:

> The draft ordinance was carefully crafted to minimize impact to the character of Franklin, particularly to the residential properties on the north side of I-287. For example, the ordinance would: limit the number of potential billboards; require that billboards be a certain distance apart; would limit their height and size; and would NOT allow billboards adjacent to the residential properties along the north side of I-287 (i.e., billboards would ONLY be permitted on the industrially-zoned land on the opposite side of I-287).

Specifically addressing the issue of digital billboards, the memo stated:

> It should be noted that the Board spent a good amount of time discussing whether to permit LED billboards in the ordinance. In the end, the Board decided that it would be best to not permit LED billboards in the Ordinance. This was done because the Board felt that it did not have enough information or sufficient expertise to craft ordinance language to appropriately address LED billboards. The Board, however, did not make a determination whether LED billboards would be inappropriate. If a billboard company wanted to pursue a LED billboard, the Board felt that the more proper forum for that discussion was before the Zoning Board of Adjustment where sworn testimony by expert witnesses would be provided and where specific conditions could potentially be placed on its operation.

In language similar to the declarations of policy underlying federal and state legislation, the stated purpose of the Ordinance is "to balance the need to control and regulate billboards, promote and preserve the scenic beauty and character of the Township, provide for the safety and convenience of the public, and to recognize certain Constitutional rights relative to outdoor advertising." The Ordinance permits a conditional use of static billboards in an area approximately 2000 feet long

A-2432-12T3

fronting on I-287 in the M-2 zone, but prohibits all digital and electronic billboards:[4]

> No billboard or billboard display area or portion thereof shall rotate, move, produce noise or smoke, give the illusion of movement, display video or other changing imagery, automatically change, or be animated or blinking, <u>nor shall any billboard or portion thereof have any electronic, digital, tri-vision or other animated characteristics resulting in an automatically changing depiction.</u>
>
> [Franklin Twp., N.J., Ordinance 3875-10 § 112-53.1(c)(3) (2010) (emphasis added).]

Both the Ordinance and N.J.A.C. 16:41C-8.7(b)(3) require a minimum of 1000 feet between billboards. Since the M-2 zone fronting I-287 is approximately 2000 feet long, the net result is that the Ordinance permitted the construction of three static billboards in that area. Because N.J.A.C. 16:41C-8.8(a)(5) requires a minimum of 3000 feet between multiple message signs, only one digital billboard would be permitted in the Township if

---

[4] The Ordinance contains other restrictions relevant to aesthetics and traffic safety. The Ordinance prohibits any billboard from being "painted with, or composed of, any material of a fluorescent, phosphorescent, or holographic material," § 3.C.6, or from displaying "pornographic or sexually indecent and/or obscene pictures, depictions, or images[.]" § 3.C.7. In addition, § 3.C.8 prohibits any billboard from displaying "words or symbols that connote[] traffic control commands, including but not being limited to 'STOP' or 'DANGER' or which may be confused as a sign displayed by a public authority."

the ban against electronic and digital billboards was eliminated from the Ordinance.

### III

When the Board began to consider the adoption of an ordinance governing billboards in 2008, E&J applied to NJDOT pursuant to N.J.S.A. 27:5-8 for a permit to erect an electronic multimessage billboard for off-site advertising on its property, which is located in the M-2 zone, with 389 feet fronting on the north side of I-287. This is an industrial district, across from a cemetery, adjacent to a large manufacturing facility with land to the rear zoned for further large manufacturing or warehouse uses. The proposed electronic billboard was oriented to I-287. A residential development lies across the highway, with the closest home approximately 500 feet away from the proposed sign. The proposed billboard consisted of two panels measuring 48' by 14' each, arranged in a V-shape for visibility to both the northbound and southbound lanes of I-287. The electronic panels would display static images in eight-second intervals without scrolling, flashing, or animation.

After the permit was issued by NJDOT in May 2009, the proposed electronic billboard remained subject to the Township's zoning ordinances. N.J.S.A. 27:5-9.1. The Township had not yet adopted the Ordinance at issue here. In September 2009, E&J

11

applied to the Board of Adjustment for a use variance under N.J.S.A. 40:55D-70(d)(1). Hearings on E&J's application were held on February 4, April 1, and June 3, 2010. The Ordinance was adopted prior to the last hearing. E&J then amended its application to request a variance pursuant to N.J.S.A. 40:55D-70(d)(3) (the D-3 variance) to permit construction of the electronic billboard. The Board of Adjustment denied its application.

E&J filed a four-count complaint in lieu of prerogative writs, alleging the prohibition of digital billboards in the M-2 zone violated both the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. E&J did not challenge any other restriction contained in the Ordinance. In addition, the complaint alleged the Board had acted arbitrarily, capriciously and unreasonably in denying its application for a variance, and that the Township acted ultra vires in adopting the Ordinance.

IV

At the bench trial that followed, evidence was presented about the character of the Township. Approximately forty-seven square miles, Franklin Township is the second largest municipality in Somerset County. It is a highly diverse community that includes urban, suburban, rural, and economic

development areas.  I-287 runs through the northwest section of the Township, passing through the M-2 industrial zone where large corporate structures and manufacturing facilities are located.  However, over forty percent of the Township is zoned for very low density and over 8,000 acres are publicly or privately preserved.

John T. Chadwick, IV, E&J's planning expert, testified, "The town has been very aggressive in preserving farmland and acquiring open space."  However, Chadwick opined that the prohibition of any digital billboard in the zone would not advance the unique beauty and character of the Township because the particular zone was an industrial district, rather than a rural or historic neighborhood, and because the closest home is 500 feet across the highway.

Jonathan Slass, a principal of E&J, testified that the digital billboard would serve traditional advertisers, small businesses, political advertisers, and nonprofit organizations. In addition, a block of time would be controlled by the Township for public service announcements as police emergencies.

Among the other witnesses E&J presented, an employee of a digital sign manufacturer testified about the safety of digital billboards and the advantage of being able to instantly change messages to serve the public interest.  A licensed professional

engineer testified there was "no conclusive evidence to suggest that digital billboards relate to an increase in accidents or have a direct correlation on [sic] driver safety." On cross-examination, the engineer admitted the methodology of the studies she relied upon has been subject to criticism.

Testifying as an expert in planning for the Township, Healey stated the Ordinance was adopted to update the Township's signage regulations and create a comprehensive regulation of outdoor advertising while preserving the Township's community character and aesthetics. Healey testified that the ban on digital billboards was consistent with the intent to preserve the Township's character for several reasons: (1) digital billboards tend to be brighter and have an appearance of being much more crisp in resolution; (2) the Township had a reasonable concern about having a digital billboard of almost 700 square feet at a gateway into the township; and (3) since the Ordinance would permit three billboards in the M-2 zone, there could be two static billboards in the M-2 zone in addition to a digital billboard if the ban was invalidated.

In response to the argument that a digital billboard would provide a means of instantly communicating emergency messages, Healey testified that the Township had the ability to do so without the use of digital billboards. There are two signs on

14

the stretch of land along I-287, placed by NJDOT, that have been used for Amber Alert and Silver Alert messages. In contrast to the size and characteristics of the proposed digital billboard, the signs are less than 100 feet square, with an amber color display on a black background and do not scroll. In addition, the Township has a "reverse 9-1-1" calling system it uses to alert residents when there is flooding. Residents are also able to sign up to receive "email blasts" from the Township when necessary.

The trial judge concluded that the Township's decision to deny E&J's application for a D-3 variance to erect the digital billboard was not arbitrary, capricious, or unreasonable. The trial judge also rejected E&J's equal protection argument, finding that the Township had demonstrated a rational basis for the distinction between digital and static billboards. Citing Greenberg v. Kimmelman, 99 N.J. 552, 563 (1985), the judge stated:

> The Township's concern with the impact of digital billboards on community aesthetics, as well as the lack of conclusive evidence regarding the impact of the billboards on traffic safety, provides at least some rational basis for enactment of the ban on digital billboards. While plaintiff asserts that the evidence indicates no such impact is likely to occur, it cannot be denied that digital billboards, at minimum, create visual stimuli different than that of a traditional billboard. By the mere fact

that the images change, there is the chance that the digital billboard could possibly impact community aesthetics or traffic safety.

Despite these findings, the trial judge invalidated § 112-53.1(c)(3) of the Ordinance, concluding that the digital billboard ban violated the First Amendment.

In its appeal, the Township argues that the trial court erred in applying an intermediate scrutiny standard to the Ordinance and that, instead, the court should have determined whether the Township's adoption of the Ordinance was arbitrary, capricious or unreasonable. Alternatively, the Township argues that because the ordinance is content-neutral, it should be reviewed pursuant to the time, place, and manner standard set forth in Ward v. Rock Against Racism, 491 U.S. 781, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989).

Because this appeal calls for our review of the "trial court's interpretation of the law and the legal consequences that flow from established facts," we conduct a de novo review. Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We agree with the trial court that a time, place, and manner review is appropriate here. But, we part company with the trial court in its reliance upon Bell. Although the language used is similar to that of the test identified in Clark v. Community for Creative Non-Violence, 468 U.S. 288, 104 S. Ct.

3065, 82 L. Ed. 2d 221 (1984), the trial court's application, relying upon Bell, required the Township to meet standards not required in the review of content-neutral time, place and manner restrictions.

V

The Township's argument that the Ordinance enjoyed a presumption of validity that could only be overcome by evidence that its regulation was arbitrary, capricious, or unreasonable lacks merit because "the regulation of billboards implicates fundamental First Amendment rights." CBS Outdoor, Inc. v. Borough of Lebanon Planning Bd./Bd. of Adjustment, 414 N.J. Super. 563, 587 (App. Div. 2010). Our view is in harmony with federal precedent.[5] "Billboards are a well-established medium of communication" that have both "communicative and noncommunicative aspects." Metromedia, supra, 453 U.S. at 501-

_____

[5] Because we ordinarily interpret our State Constitution's free speech clause, N.J. Const. art. I, ¶6, to be no more restrictive than the First Amendment to the United States Constitution, "'we rely on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution.'" Hamilton Amusement Ctr. v. Verniero, 156 N.J. 254, 264 (1998) (quoting Karins v. City of Atlantic City, 152 N.J. 532, 547 (1998)), cert. denied, 527 U.S. 1021, 119 S. Ct. 2365, 144 L. Ed. 2d 770 (1999)); see also Bell, supra, 110 N.J. at 393. Two exceptions to the general rule, not applicable here, are political expression at privately-owned-and-operated shopping malls, N.J. Coal. Against War in the Middle E. v. J.M.B. Realty Corp., 138 N.J. 326 (1994), cert. denied, 516 U.S. 812, 116 S. Ct. 62, 133 L. Ed. 2d 25 (1995), and defamation, Sisler v. Gannett Co., 104 N.J. 256 (1986).

02, 101 S. Ct. at 2889-90, 69 L. Ed. 2d at 811 (plurality opinion). "[T]he government has legitimate interests in controlling the noncommunicative aspects of the medium, but the First and Fourteenth Amendments foreclose a similar interest in controlling the communicative aspects." Id. at 502, 101 S. Ct. at 2890, 69 L. Ed. 2d at 811 (citation omitted). "Because regulation of the noncommunicative aspects of a medium often impinges to some degree on the communicative aspects, it has been necessary for the courts to reconcile the government's regulatory interests with the individual's right to expression." Ibid.; see also Ladue, supra, 512 U.S. at 48, 114 S. Ct. at 2042, 129 L. Ed. 2d at 43. We conduct "a particularized inquiry into the nature of the conflicting interests at stake here, beginning with a precise appraisal of the character of the ordinance as it affects communication." Metromedia, supra, 453 U.S. at 503, 101 S. Ct. at 2890, 69 L. Ed. 2d at 812.

As we have noted, the Ordinance did not ban all billboards, only one feature of billboards that is unrelated to the content of any message. To be precise, the practical effect of the ban was to prohibit electronic multi-messaging on a single billboard in the Township. In sum, it is essentially undisputed that a "time, place or manner" analysis is appropriate.

Under the applicable standard, time, place or manner restrictions are valid, provided they satisfy three criteria: (1) they "are justified without reference to the content of the regulated speech," (2) "they are narrowly tailored to serve a significant governmental interest," and (3) "they leave open ample alternative channels for communication of the information." Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753, 105 L. Ed. 2d at 675; Clark, supra, 468 U.S. at 293, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227; see also McCullen v. Coakley, ___ U.S. ___, ___, 134 S. Ct. 2518, 2529, 189 L. Ed. 2d 502, 514 (2014); Hill v. Colorado, 530 U.S. 703, 725-26, 120 S. Ct. 2480, 2494, 147 L. Ed. 2d 597, 617 (2000); Besler, supra, 201 N.J. at 570; In re Atty Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps.", 200 N.J. 283, 304 (2009); Hamilton Amusement Ctr., supra, 156 N.J. at 267-68.

Although the trial court found the Ordinance to be a time, place and manner restriction, it did not apply the standard identified in Ward and Clark for the review of content-neutral time, place and manner restrictions. Instead, the court relied heavily upon our Supreme Court's decision in Bell, and concluded that the Township had failed to supply "a factual basis demonstrating that the Ordinance's ban on only

digital/electronic billboards serves a legitimate government interest and is narrowly drawn to advance its government interests." The trial court's reliance upon <u>Bell</u> was misplaced on both legal and factual grounds.

The ordinance in <u>Bell</u> created a township-wide ban on billboards. In contrast, here, the Township has not banned all billboards. In addition to those billboards erected before it was adopted, the Ordinance permits the erection of three billboards in the M-2 zone. As we have noted, there has been no challenge to the Ordinance on the ground that it unreasonably limits the number or location of billboards.

Unlike the explicit statements of reasons for the Township's action here, borne out by a supporting history, the challenged ordinance in <u>Bell</u> failed to reveal any "governmental objectives or its factual underpinnings," and the record was "almost completely devoid of any evidence concerning what interests of Stafford are served by the ordinance and the extent to which the ordinance has advanced those interests." 110 <u>N.J.</u> at 396. Because the ordinance encroached upon a fundamental right, the Court rejected the municipality's argument that its ordinance was entitled to a presumption of validity, and analyzed the constitutionality of the ordinance based upon its total prohibition of a form of expression. <u>Id.</u> at 395-96.

It is also telling that <u>Bell</u> did not engage in an analysis of a content-neutral time, place, and manner restriction on expression pursuant to the standard applied in both <u>Clark</u>, <u>supra</u>, 468 <u>U.S.</u> at 293, 104 <u>S. Ct.</u> at 3069, 82 <u>L. Ed.</u> 2d at 227, and <u>City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 <u>U.S.</u> 789, 104 <u>S. Ct.</u> 2118, 80 <u>L. Ed.</u> 2d 772 (1984), a standard that has since been applied by our courts in reviewing such regulations.[6] <u>E.g.</u>, <u>Hamilton Amusement Ctr.</u>, <u>supra</u>, 156 <u>N.J.</u> at 267-68. Instead, the Court applied the <u>Central Hudson</u>[7] test relied upon by the plurality in <u>Metromedia</u> which governs the review of restrictions on commercial speech that are <u>not</u> content-neutral. <u>Bell</u>, <u>supra</u>, 110 <u>N.J.</u> at 392-98. The four-part <u>Central Hudson</u> test requires that (1) the commercial speech "must concern lawful activity and not be misleading," (2) the asserted governmental interest must be substantial, (3) the regulation must "directly advance[] the governmental interest asserted," and (4) the regulation must not be "more extensive than is necessary to serve that interest." <u>Cent. Hudson</u>, <u>supra</u>, 447 <u>U.S.</u> at 566, 100 <u>S. Ct.</u> at 2351, 65 <u>L. Ed.</u> 2d at 351.

---

[6]   <u>Ward</u> was decided after <u>Bell</u>.

[7]   <u>Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n</u>, 447 <u>U.S.</u> 557, 566, 100 <u>S. Ct.</u> 2343, 2351, 65 <u>L. Ed.</u> 2d 341, 351 (1980).

However, when the government regulates "features of speech unrelated to its content," it is afforded "somewhat wider leeway." McCullen, supra, ___ at ___, 134 S. Ct. at 2529, 189 L. Ed. 2d at 514. The level of scrutiny we apply depends on whether the restriction is a content-neutral regulation of the time, place, or manner of the speech or whether it is a restriction on the content of the speech itself. See id. at ___, 134 S. Ct. at 2529, 189 L. Ed. 2d at 514-15.

Since Bell, our courts have recognized that the standard governing the regulation of commercial speech[8] that is not content-neutral and the standard applicable to time, place, and manner restrictions, are often "closely intertwined," and have even applied both tests simultaneously. See Hamilton Amusement Ctr., supra, 156 N.J. at 268 (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 46, 54-55, 106 S. Ct. 925, 928,

---

[8]  The primary use of the billboard here is for commercial speech, i.e., "expression related solely to the economic interests of the speaker and its audience." Cent. Hudson, supra, 447 U.S. at 561, 100 S. Ct. at 2349, 65 L. Ed. 2d at 348. Such speech, "proposing a commercial transaction," id. at 562, 100 S. Ct. at 2349, 65 L. Ed. 2d at 348, may be subject to stricter regulations than non-commercial speech. State v. DeAngelo, 197 N.J. 478, 485 (2009); see also Metromedia, supra, 453 U.S. at 512-15, 101 S. Ct. at 2895-96, 69 L. Ed. 2d at 818-19 (plurality opinion concluding that ordinance met constitutional guidelines "insofar as it regulated commercial speech," but was unconstitutional because of its restrictive impact on non-commercial speech); Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 72 (1985).

932, 89 L. Ed. 2d 29, 37, 42 (1986)); N.J. Dep't. of Labor & Workforce Dev. v. Crest Ultrasonics, 434 N.J. Super. 34, 38 (App. Div. 2014). The analyses in these cases support our conclusion that the trial court's interpretation imposed a burden on the Township that is not required for content-neutral restrictions on time, place, and manner expression. We therefore conduct a de novo review of the application of the Ward test to the Ordinance here.

A

Because there is no serious issue that the restriction here is content-neutral, the first prong of the Ward test is satisfied. Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675. However, because that factor weighs heavily in the analysis, further discussion is merited.

Government regulation of expressive activity is content-neutral so long as it is "justified without reference to the content of the regulated speech." Clark, supra, 468 U.S. at 293, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227. The government's purpose in adopting the regulation is "the controlling consideration" in determining content neutrality. Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675. "The principal inquiry . . . is whether the government has adopted a regulation of speech because of disagreement with the message it

conveys." Ibid. When the regulation "serves purposes unrelated to the content of expression," it is "deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ibid.; see also Besler, supra, 201 N.J. at 570-71; Hamilton Amusement Ctr., supra, 156 N.J. at 268.

On its face, the Ordinance does not restrict any speech based on its content. The restriction at issue applies with equal force, regardless of the content of the speech. E&J did not argue and the trial court did not find that the Township's motivation in adopting the Ordinance was anything other than its stated interests in aesthetics and traffic safety. Although the trial court concluded that those interests were not sufficiently advanced by the digital billboard ban, it is undisputed that the Township's purpose, the "controlling consideration," Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675, was to serve its interests in aesthetics and traffic safety. The Ordinance plainly meets the definition of a content-neutral regulation.

Further, the restriction relates only to the format in which the communication is delivered — by way of a digital billboard as opposed to a static billboard. Even if the digital delivery system may be considered "expressive and part of the message delivered," the regulation remains a restriction on the

manner of expression, see Clark, supra, 468 U.S. at 294, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227-28, and is therefore governed by the standard applicable to restrictions on the time, place, or manner of expression.

E&J agrees that a time, place and manner analysis applies here. However, somewhat incongruously, it also contends that the ban on digital billboards "constitutes a non-content neutral restriction on plaintiff's planned and non-commercial speech," and "discriminate[s] between forms of non-commercial speech." In support of the latter argument, E&J states that while certain non-commercial messages could be adequately presented on a static billboard, emergency public service announcements such as Amber Alerts cannot be communicated through that medium.

E&J's effort to elevate the ban on digital billboards to a content related restriction lacks any merit. As we have noted, a restriction on speech that serves purposes unrelated to the content of the speech is "deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2754, 105 L. Ed. 2d at 675.

Moreover, "the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places." Vincent, supra, 466 U.S. at 812, 104 S. Ct.

at 2132, 80 L. Ed. 2d at 791 (citing Heffron v. Int'l Soc. for Krishna Consciousness, 452 U.S. 640, 647, 101 S. Ct. 2559, 2564, 69 L. Ed. 2d 298, 306 (1981)). In Clark, demonstrators who wanted to call attention to the plight of the homeless challenged a ban on sleeping in national parks. 468 U.S. at 289, 104 S. Ct. at 3067, 82 L. Ed. 2d at 224. Rejecting their constitutional claim, the Court stated, "That sleeping . . . may be expressive and part of the message delivered by the demonstration does not make the ban any less a limitation on the manner of demonstrating, for reasonable time, place, or manner regulations normally have the purpose and direct effect of limiting expression but are nevertheless valid." Clark, supra, 468 U.S. at 294, 104 S. Ct. at 3069, 82 L. Ed. 2d at 227-28. In Vincent, supra, 466 U.S. at 810, 104 S. Ct. at 2131, 80 L. Ed. 2d at 790, the challenged ordinance also prohibited a "medium of expression," the posting of signs on public property. In upholding the constitutionality of the ordinance, the Supreme Court stated, "it is the tangible medium of expressing the message that has the adverse impact on the appearance of the landscape. . . . [T]he substantive evil -- visual blight -- is not merely a possible byproduct of the activity, but is created by the medium of expression itself." Ibid.

Here, the Township justifies its prohibition of digital billboards based on its interest in aesthetics and traffic safety, "without reference to the content of the regulated speech." See Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753, 105 L. Ed. 2d at 227. Even if the use of an electronic multi-message is considered a form of expression, the incidental effect of the Ordinance's ban on announcements to be communicated in eight-second segments does not strip the Ordinance of its content neutrality. We therefore turn to the remaining criteria and their application here.

B

The second prong of the Ward test is that the regulation must be "narrowly tailored to serve a significant governmental interest." Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753, 105 L. Ed. 2d at 675. This requires us to determine first, whether there is such a governmental interest and second, whether the regulation is "narrowly tailored" to serve that interest.

The burden of proving a "substantial government interest" is not a heavy one. Hamilton Amusement Ctr., supra, 156 N.J. at 270-71. A zoning ordinance "need not articulate its objectives," id. at 271 (citing Zilinsky v. Zoning Bd. of Adjustment, 105 N.J. 363, 371 (1987)), or produce "empirical

A-2432-12T3

data . . . accompanied by a surfeit of background information." Id. at 271 (quoting Fla. Bar v. Went for It, Inc., 515 U.S. 618, 628, 115 S. Ct. 2371, 2378, 132 L. Ed. 2d 541, 552 (1995)). To satisfy this burden, the evidence must "provide a rational, objective basis from which a reviewing court can ascertain the existence of a substantial governmental interest underpinning the legislation," Twp. of Cinnaminson v. Bertino, 405 N.J. Super. 521, 535 (App. Div.), cert. denied, 199 N.J. 516 (2009), and will be sufficient if "whatever evidence the [legislative body] relies upon is reasonably believed to be relevant to the problem" addressed. Hamilton Amusement Ctr., supra, 156 N.J. at 270 (quoting Renton, supra, 475 U.S. at 51-52, 106 S. Ct. at 931, 89 L. Ed. 2d at 40). Such support may come in the form of "reference to studies pertaining to other jurisdictions, legislative history, consensus, and even common sense." Id. at 271.

The government interests identified here were aesthetics and traffic safety. It is universally recognized that government has a legitimate, even substantial, interest in preserving the aesthetics of its community and in promoting traffic safety. See Metromedia, supra, 453 U.S. at 507-08, 101 S. Ct. at 2892, 69 L. Ed. 2d at 815 (noting that "traffic safety and the appearance of the city . . . are substantial

governmental goals"). Further, there is little dispute that billboards, of any type, are widely considered to have a negative impact upon aesthetics and traffic safety. See Vincent, supra, 466 U.S. at 808, 104 S. Ct. at 2130-31, 80 L. Ed. 2d at 789 (stating it is not speculative to recognize that posted signs, like billboards, can be perceived as an "esthetic harm"); Metromedia, supra, 453 U.S. at 508-09, 101 S. Ct. at 2893, 69 L. Ed. 2d at 815-16 (stating "as a matter of law that an ordinance which eliminates billboards designed to be viewed from streets and highways reasonably relates to traffic safety"); Susan C. Sharpe, "Between Beauty and Beer Signs": Why Digital Billboards Violate the Letter and Spirit of the Highway Beautification Act of 1965, 64 Rutgers L. Rev. 515 (2012).

Here, the Ordinance explicitly stated the purpose for its regulation of billboards was "to balance the need to control and regulate billboards, promote and preserve the scenic beauty and character of the Township, provide for the safety and convenience of the public, and to recognize certain Constitutional rights relative to outdoor advertising." See Naser Jewelers, Inc. v. City of Concord, 513 F.3d 27, 34 (1st Cir. 2008) (finding that the city's "stated justifications plainly constitute significant governmental interests").

Turning to the evidence relied upon by the Township, we note the record includes repeated statements from the Environmental Commission of its concerns regarding the glare from billboards onto residential properties and its urging that billboards not be visible from residential properties. Healey's recommendations to the Board regarding locations for billboards reflected concern as to whether placement "would significantly detract from community character," or have little effect because of existing conditions at the site.[9] Healey also testified that specific attributes of digital billboards, such as their increased crispness and brightness, and the possible placement with additional static billboards, were relevant to the decision to adopt a ban. The Township also offered excerpts from the NJDOT, Bureau of Safety Programs, Summary of Crash Rates on State and Interstate Highways in Route and Milepost Order for

_____

[9] The fact that E&J's billboard would be placed on a section of I-287 which is already industrialized does not detract from the Township's stated interest in preserving aesthetics. In Interstate Outdoor Advertising, L.P. v. Zoning Board of Mt. Laurel, 706 F.3d 527, 532 (3d Cir. 2013), the Court of Appeals rejected a similar argument, stating, "The industrial nature of the highway does not mitigate Mount Laurel's concerns about the aesthetics of the highway. In fact, it may well suggest an even greater need to guard against the deterioration of the Township's character and evoke a greater concern for safety."

2006 through 2009;[10] Jerry Wachtel, <u>A Critical, Comprehensive Review of Two Studies Recently Released by the Outdoor Advertising Association of America</u> (Final Report 2007), and excerpts from a publication of the United States Department of Transportation, <u>The Effects of Commercial Electronic Variable Message Signs (CEVMS) on Driver Attention and Distraction: An Update, Federal Highway Administration</u>, Publication Number FHWA-HRT-09-018 (2009) (<u>USDOT Report</u>).[11] The last of these studies concluded it was important to conduct "carefully controlled and methodologically sound" research because the available studies were inconclusive in "demonstrating detrimental driver safety effects due to CEVMS exposure." <u>USDOT Report</u> at 7.0 Conclusions.

The recognized need for further studies on the impact of such billboards, along with the Township's stated reasons, provides a rational, objective basis for the Township's decision to refrain from adopting a regulation of them. In all, the record establishes that the Township relied on evidence "reasonably believed to be relevant to" the interest identified

---

[10] The full reports for 2006 through 2009 are available at http://www.State.NJ.US/transportation/refdata/accident (last visited Oct. 2, 2014).

[11] The report is available at http://www.fhwa.dot.gov/real_estate/oac/possible_effects/ (last visited Oct. 2, 2014).

in the Ordinance's stated purpose.  See Hamilton Amusement Ctr., supra, 156 N.J. at 270.  It is further evident from the Ordinance's declaration of purpose, its drafting history and the proofs presented at trial that the Township's stated interests in the regulation here were authentic and not a subterfuge for an improperly motivated restriction on expression.  We are satisfied that the Township presented adequate proof of a substantial government interest for the regulation.

Under the Ward standard our Supreme Court applies, there are two components to the "narrowly tailoring" requirement:  (1) the regulation must promote a substantial government interest that would be achieved less effectively without the regulation, and (2) the restriction must not "burden substantially more speech than is necessary to further" the State's content-neutral interest.  Ward, supra, 491 U.S. at 798-800, 109 S. Ct. at 2757-58, 105 L. Ed. 2d at 680-81.

The government's determination as to whether a content-neutral regulation "promotes a substantial government interest" will ordinarily be entitled to our deference.  "'The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be

promoted." Id. at 800, 109 S. Ct. at 2758, 101 L. Ed. 2d at 681

(quoting United States v. Albertini, 472 U.S. 675, 689, 105 S.

Ct. 2897, 2907, 86 L. Ed. 2d 536, 548 (1985)).

Turning to the requirement that the restriction be narrowly drawn, the trial court found the ban on digital billboards was more expansive than necessary to "preserv[e] aesthetics and traffic safety," relying upon Bell, supra, 110 N.J. at 396-97, for the proposition that an ordinance's restriction must be "the least restrictive means of advancing its legitimate government interest."

It is, however, clear that a regulation need not be "the least restrictive means" to satisfy the requirement that a content-neutral restriction on time, place, and manner be "narrowly tailored." In Ward, which was decided after Bell, the United States Supreme Court squarely addressed this question, stating:

> Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so. Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." To be sure, this standard does not mean that a time, place, or manner regulation may burden

33

substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals. So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

[Ward, supra, 491 U.S. at 798-800, 109 S. Ct. at 2757-58, 105 L. Ed. 2d at 680-81 (internal citations and quotations omitted) (emphasis added).]

See also Clark, supra, 468 U.S. at 299, 104 S. Ct. at 3072, 82 L. Ed. at 230 (rejecting the proposition that the challenged regulation was invalid because there were "less speech-restrictive alternatives that could have satisfied the Government interest."). Thereafter, in Board of Trustees v. Fox, 492 U.S. 469, 477-78, 109 S. Ct. 3028, 3033-34, 106 L. Ed. 2d 388, 402 (1989), the Court again clarified:

We have refrained from imposing a least-restrictive-means requirement -- even where core political speech is at issue -- in assessing the validity of so-called time, place, and manner restrictions. We uphold such restrictions so long as they are "narrowly tailored" to serve a significant governmental interest, a standard that we have not interpreted to require elimination of all less restrictive alternatives. . . . In requiring that to be "narrowly tailored" to serve an important or substantial state

34                                                    A-2432-12T3

> interest, we have not insisted that there be no conceivable alternative, but only that the regulation not "burden substantially more speech than is necessary to further the government's legitimate interests."  And we have been loath to second-guess the Government's judgment to that effect.
>
> [(Internal citations omitted).]

See also Regan v. Time, Inc., 468 U.S. 641, 657, 104 S. Ct. 3262, 3271, 82 L. Ed. 2d 487, 500 (1984) (plurality opinion) ("The less-restrictive-alternative analysis . . . has never been a part of the inquiry into the validity of a time, place, and manner regulation.").

Since Bell was decided, our Supreme Court has had the opportunity to declare whether our Constitution demands that a challenged regulation satisfy a "least restrictive means" test and instead reaffirmed its reliance "on federal constitutional principles in interpreting the free speech clause of the New Jersey Constitution."  Hamilton Amusement Ctr., supra, 156 N.J. at 264.  Addressing the "narrowly tailored" requirement, our Supreme Court explicitly relied upon the standard set forth in Ward, stating, "to satisfy Central Hudson and the narrow tailoring requirement of Clark,[12] the regulation need not be

---

[12]  Finding the restriction of signage in sexually oriented businesses in N.J.S.A. 2C:34-7c was content-neutral and that the purpose of the statute was to regulate commercial speech, Hamilton Amusement Ctr., supra, 156 N.J. at 266-68, the Court
(continued)

the least restrictive means of serving the State's content-neutral substantial interest."  Id. at 277 (emphasis added) (citing Ward, supra, 491 U.S. at 797, 109 S. Ct. at 2757, 105 L. Ed. 2d at 679).  The appropriate standard requires only that "the means chosen does not 'burden substantially more speech than is necessary to further' the State's content-neutral interest."  Ibid. (quoting Ward, supra, 491 U.S. at 799, 109 S. Ct. at 2758, 105 L. Ed. 2d at 681).  Here, too, the government's decision as to how to achieve its objective is afforded some deference.

> What our decisions require is a "'fit' between the legislature's ends and the means chosen to accomplish those ends," -- a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is "in proportion to the interest served," that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective.  Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.
>
> [Fox, supra, 492 U.S. at 478-480, 109 S. Ct. at 3033-35, 106 L. Ed. 2d at 402-04 (internal citations omitted) (emphasis added).]

---

(continued)
determined the restriction should be examined simultaneously under both the time, place and manner test articulated in Clark, and the test applicable to the regulation of commercial speech that is not content-neutral set forth in Central Hudson.  Id. at 268.

A-2432-12T3

"'It is not [the] function [of the Court] to appraise the wisdom of [the governmental regulation because the government] . . . must be allowed a reasonable opportunity to experiment with solutions to admittedly serious problems.'" Hamilton Amusement Ctr., supra, 156 N.J. at 278 (quoting Renton, supra, 475 U.S. at 52, 106 S. Ct. at 931, 89 L. Ed. 2d at 42).

The fact that the Ordinance bans all digital billboards does not preclude a finding that the Ordinance is "narrowly tailored." In Vincent, the Court concluded that an ordinance's complete ban on signs was "narrowly tailored" because the ordinance "did no more than eliminate the exact source of the evil it sought to remedy," visual clutter. 466 U.S. at 808, 104 S. Ct. at 2130, 80 L. Ed. 2d at 789. See also Fox, supra, 492 U.S. at 478, 109 S. Ct. at 3033-34, 106 L. Ed. 2d at 402 ("[W]e have been loath to second-guess the Government's judgment" as to whether the regulation does not "burden substantially more speech than is necessary to further the government's legitimate interests."); Interstate Outdoor, supra, 706 F.3d at 532 ("In the context of billboards, the Supreme Court has deferred to the collective judgment of both legislatures and lower courts, and highlighted the importance of considering the plainly unattractive nature of billboards when evaluating whether a

A-2432-12T3

billboard ban directly advances a local government's interests in traffic safety and aesthetics.")

The "source of the evil" the Township sought to remedy was the heightened intrusive quality of digital billboards, affecting the aesthetics of the town and the residential area nearby, and a not unreasonable unease that the digital billboards would have a negative impact upon traffic safety. The ban on digital billboards was no broader than was necessary to eliminate that heightened intrusive quality. Moreover, the ban was adopted within an Ordinance that permitted billboards in the Township under conditions not otherwise challenged here. The record here shows that the Township clearly stated its objectives for the Ordinance, that it considered the concerns expressed and information received during the deliberative process, and that other provisions in the Ordinance serve the same objectives of traffic safety and aesthetics. These facts all support the conclusion that the ban on digital billboards "represents a reasoned compromise between serving the [Township's] asserted goals and allowing some" billboards in the Township. See Hamilton Amusement Ctr., supra, 156 N.J. at 278-79. We are therefore satisfied that the second prong was met.

C

The third prong requires that the restrictions imposed by the regulation "leave open ample alternative channels for communication of the information." Ward, supra, 491 U.S. at 791, 109 S. Ct. at 2753, 105 L. Ed. 2d at 675. See also Heffron v. Int'l Soc. for Krishna Consciousness, 452 U.S. 640, 654, 101 S. Ct. 2559, 2567, 69 L. Ed. 2d 298, 311 (1981). "[A] restriction on expressive activity may be invalid if the remaining modes of communication are inadequate." Vincent, supra, 466 U.S. at 812, 104 S. Ct. at 2132, 80 L. Ed. 2d at 791. To assess the adequacy of remaining modes of communication, we focus upon the advantage of the restricted means of expression and determine whether "these same advantages cannot be obtained through other means."[13] Ibid.

The advantage to an electronic multi-message billboard is that a message may be posted or changed in short order. E&J admits that the lion's share of the commercial speech to be projected on its proposed billboard does not require this advantage. The only type of message identified as being

---

[13] While there may be differences between the cost and potential audience of the alternatives and the proposed digital billboard, that does not render the alternative avenues of communication inadequate. See Interstate Outdoor, supra, 706 F.3d at 535; Naser Jewelers, supra, 513 F.3d at 37.

adversely affected by the loss of this advantage is emergency public service announcements. Healey testified that other means were available to satisfy this need. Signs posted by NJDOT on I-287 were used to provide Amber alerts and Silver alerts; the Township has a "reverse 9-1-1" calling system and a system for sending "email blasts" to residents when necessary.

The means identified by Healey may reasonably be viewed as comparable to that provided by digital billboards in providing public service information on an emergent basis. And, because the audience who can receive communications through the proposed digital billboard is limited to motorists on a limited stretch of I-287, the alternative means are clearly superior in terms of their ability to reach the residents of the Township. We therefore conclude that "ample alternative channels for communication of the information" are left available by the Ordinance, satisfying the third prong of the Ward test.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2432-12T3