WESLEY K. BELL, T/A WES OUTDOOR ADVERTISING CO., PLAINTIFF-RESPONDENT, v. TOWNSHIP OF STAFFORD, A MUNICIPALITY IN THE COUNTY OF OCEAN, STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND ROBERT H. MEARS, CONSTRUCTION OFFICIAL OF THE TOWNSHIP OF STAFFORD, AND THE COUNTY OF OCEAN, DEFENDANTS.

Argued January 5, 1988—Decided May 26, 1988.

*Thomas E. Monahan* argued the cause for appellant (*Gilmore & Monahan,* attorneys; *J. Mark Mutter* and *Charles W. Hutchinson,* on the briefs).

*Wesley K. Bell* argued the cause for respondent, *pro se.*

*Theodore L. Abeles* submitted a brief on behalf of *amicus curiae* Gannett Outdoor Co., Inc. of New Jersey (*Lum, Hoens, Abeles, Conant & Danzis,* attorneys).

*Jeffrey M. Hall* and *Kenneth I. Hyman* submitted a brief on behalf of *amicus curiae,* The Outdoor Advertising Association

of New Jersey (*Strauss & Hall*, attorneys; *Jeffrey M. Hall*, of counsel).

The opinion of the Court was delivered by

HANDLER, J.

This case engenders first amendment and freedom of speech concerns arising from the efforts of a municipality to regulate through its zoning powers the use of billboards as a form of out-door advertising. The controversy arose from the Township of Stafford's ("Township" or "Stafford") enactment and enforcement of an ordinance declaring that "[b]illboards, sign-boards, and off-premises advertising signs and devices are prohibited within any zoning district of the Township." [1]

Three separate billboards owned by Wesley K. Bell ("Bell"), trading as Wes Outdoor Advertising, that are located along Route 72 in the municipality have been affected by the ordinance, whose constitutional validity was upheld by the trial court. In an unpublished *per curiam* opinion, the Appellate Division reversed the trial court's decision and found that the ordinance was unconstitutional. Stafford filed a petition for certification and notice of appeal. We granted certification, 108 *N.J.* 191 (1987),[2] and now affirm the Appellate Division's decision.

I.

In its opinion, the Appellate Division provided a brief recitation of the underlying events, which suffices for our disposition of the matter.

---

[1] Stafford Ordinance No. 84–35 (amended by Ordinance No. 85–68, superseded by Ordinance No. 86–20).

[2] During the pendency of this appeal, both parties sought to have the Court consider additional, ancillary issues. These issues, it appears, were the subject of only marginal consideration by both the trial court and Appellate Division. Accordingly, we deny the requests of the parties to address these issues, with the exception of our treatment of the validity of Ordinance 86–20. *Infra* at 390 n. 4.

During the latter half of the 1960's Wesley K. Bell obtained title to two plots of land located along Route 72 in Stafford identified as Block 145A, Lot 26A (Lot 26A) and Block 120, Lot 8 (Lot 8). Thereafter, Bell constructed a number of billboards on these properties. During the early 1970's the DOT [*i.e.*, Department of Transportation] sought to condemn a portion of Lot 26A in order to widen Route 72, a State highway which passes through Stafford. Bell unsuccessfully challenged that condemnation action in the state and federal courts.

On September 30, 1983 agents of the DOT entered upon Lot 26A and cut down the billboard located thereon. At the same time, the DOT mistakenly tore down the billboard located on Lot 8 even though this land had not been condemned by the State. Bell then disassembled the billboards and removed them to his warehouse for repairs. In May 1984 Bell reconstructed the billboard on the portion of Lot 26A which the State had not taken in the condemnation proceedings, despite an order by Stafford not to do so.

On May 8, 1984 Bell entered into a contract with Lewis [*sic*] and Jeanne Raupp to purchase a plot of land identified as Block 158A, Lots 114 and 119 (Block 158A) which contained a billboard thereon. On May 18, 1984 Bell purchased another billboard which he intended to relocate to the property he had just purchased from the Raupps. Thereafter, he filed an application with Stafford seeking approval of the relocation.

On May 30, 1984, Stafford filed an action in the Chancery Division, claiming that Bell needed a building permit in order to maintain the billboard on Lot 26A. The judge who heard the matter held that a new building permit was required notwithstanding the fact that Bell had obtained a building permit at the time that the original billboard had been constructed on Lot 26A. During the first week of June 1984, Bell also began to reconstruct the billboard which had been improperly torn down by the DOT on Lot 8. Stafford's construction code official, Robert Mears (Mears), ordered Bell to stop work on this billboard until he obtained a building permit. Stafford then filed a second suit and the same judge again determined that a building permit was required in order to reconstruct the billboard on Lot 8.

As a result of that litigation, Bell filed applications for building permits on Lots 26A and 8. In the meantime, Stafford had amended its Ordinance 77–22, which had regulated the use of billboards in the Township, by passing Ordinance No. 84–35, which sought to prohibit all billboards for off-premises advertising within any zoning district of the Township. On July 2, 1984 Bell received written notices denying his application for building permits on Lots 26A and 8 and his application to relocate the billboard from Block 181, Lot 4 to Block 158A, Lots 114 and 119. Among other reasons, the applications purportedly were denied because billboards were prohibited under Ordinance 84–35 within any zoning district of the municipality.

On receipt of the Township notices Bell filed a complaint in lieu of prerogative writs against the Township, which in part sought a declaratory judgment that the ordinance was unconstitutional on its face. The trial court rejected this argument but

the Appellate Division reversed, ruling that the ordinance was facially unconstitutional.

Stafford contends that the Appellate Division erred in declaring the ordinance unconstitutional. The Township maintains that the appellate court should have refrained from making its determination of unconstitutionality, and instead have decided this case on nonconstitutional grounds. Specifically, the Township's alleges: (1) that Bell's billboards are not entitled to protection as non-conforming uses; (2) that the Township should not have any wrong imputed to it because of the DOT's actions; and (3) that Bell's permits could properly have been denied due to failure to timely submit a site plan.

## II.

We deal first with the contention that in this case a decision on constitutional grounds would be improvident. This contention, made by the Township, invokes the doctrine of "strict necessity."

Generally, courts will adjudicate the constitutionality of legislation only if a constitutional determination is absolutely necessary to resolve a controversy between parties. This doctrine of "strict necessity," articulated by the United States Supreme Court in *Rescue Army v. Municipal Court of Los Angeles,* 331 *U.S.* 549, 67 *S.Ct.* 1409, 91 *L.Ed.* 1666 (1947), is well-recognized. Thus, in *Donadio v. Cummingham,* 58 *N.J.* 309, 325–26 (1971), we acknowledged that "a court should not reach and determine a constitutional issue unless absolutely imperative in the disposition of litigation." *See, e.g., Ahto v. Weaver,* 39 *N.J.* 418 (1963); *State v. Salerno,* 27 *N.J.* 289 (1958); *American Bank & Trust Co. of Pennsylvania v. Lott,* 193 *N.J.Super.* 516 (App. Div.1984), aff'd, 99 *N.J.* 32 (1985).[3]

---

[3]Nevertheless, a court may in some cases address constitutional issues despite the absence of strict necessity for doing so. *See, e.g., Schaad v. Ocean Grove Camp Meeting Ass'n,* 72 *N.J.* 237 (1977), overruled on other grounds,

Stafford argues that the "strict necessity" principle, exemplified by *Rescue Army* and *Donadio*, precludes disposition of a case on constitutional grounds where there is a nonconstitutional basis available for the decision. It contends that this is such a case because the court could have upheld the Township's denial of Bell's billboard application on the basis of nonconstitutional arguments. In addition, the Township suggests that the billboard ban need not be considered to resolve the dispute between the parties. However, the Township clearly relied on the billboard-ban of its ordinance to deny Bell his building permits. Its action is squarely predicated on the validity of the ordinance.[4]

Moreover, Bell has the standing to press this constitutional challenge. This is confirmed by the Declaratory Judgments Act, *N.J.S.A.* 2A:16–53, which expressly confers standing on a person whose legal rights have been affected by a municipal ordinance. Our courts have acknowledged that this Act should be liberally construed and administered in order to carry out its purpose. *See New Jersey Banker's Ass'n v. Van Riper,* 1 *N.J.* 193, 198 (1948); *Rego Indus., Inc. v. American Model*

---

*State v. Celmer,* 80 *N.J.* 405, *cert.* denied, 444 *U.S.* 951, 100 *S.Ct.* 424, 62 *L.Ed.*2d 321 (1979); *Winberry v. Salisbury,* 5 *N.J.* 240, *cert.* denied, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.*2d 638 (1950); *Public Serv. Coordinated Transp. v. Newark Elizabeth Indep. Bus Owners Ass'n,* 3 *N.J.* 118 (1949).

[4] The original ordinance, No. 84–35, was subsequently amended by Ordinance No. 85–68 for the purpose of curing certain publication defects in 84–35 and also to incorporate 84–35 into the overall municipal zoning ordinance. Ordinance 85–68, in turn, was later replaced by Ordinance 86–20. Since "the operative terms of the ordinance[s], upon which the trial court had ruled, remained unchanged ...," *Riggs v. Long Beach Township,* 101 *N.J.* 515, 524–25 (1986), rev'd on other grounds, 109 *N.J.* 601 (1988), the existence of the latter ordinance in no way affects the merits or justifies a remand of the matter. In the interests of simplicity and clarity, we will refer to the statutory scheme in question as "the ordinance." Because the Township relied primarily on the current ordinance as a basis for its actions, the appellate court correctly applied the law that was operative at the time of its decision. *See Kruvant v. Cedar Grove,* 82 *N.J.* 435, 440–42 (1980).

*Metals Corp.*, 91 *N.J.Super.* 447, 454 (App.Div.1966). While the Act is not to be used to secure decisions that are only advisory in effect, *Civil Serv. Comm'n v. Senate of State of N.J.*, 165 *N.J.Super.* 144 (App.Div.), certif. denied, 81 *N.J.* 266 (1979), it does afford expeditious relief from uncertainty with respect to rights when claims are in genuine conflict. *Hartford Acc. & Indem. Co. v. Selected Risks Indem. Co.*, 65 *N.J.Super.* 328 (App.Div.1961).

In this case it is clear that an issue involving the constitution-ality of the ordinance is properly presented. The case is brought by a party with standing to raise the constitutional issue in a context warranting such a decision in order fairly to resolve the legal controversy engendered by the application of the ordinance.

### III.

In dealing with the merits of the constitutional issue present-ed, it is instructive to consider the underlying constitutional interests that are implicated. The United State Supreme Court has recognized the importance of these interests in similar contexts involving local government attempts totally to prohibit or drastically to curtail forms of free speech and expression.

In *Schad v. Borough of Mt. Ephraim*, 452 *U.S.* 61, 101 *S.Ct.* 2176, 68 *L.Ed.*2d 671 (1981), the Supreme Court struck down as unconstitutional a municipal zoning ordinance that prohibited all live entertainment, including nude dancing, in any establish-ment within the Borough of Mount Ephraim. There, Justice White, writing for the Court, articulated the standard of review to be applied where a zoning law infringes on a protected fundamental right, such as free speech: "it must be narrowly drawn and must further a sufficiently substantial governmental interest." *Id.* 452 *U.S.* at 68, 101 *S.Ct.* at 2182, 68 *L.Ed.*2d at 680. Thus, not only must a court assess the substantiality of the governmental interests asserted but it also must determine whether those interests could be served by means that would

be less intrusive on free speech. *Id.* at 70, 101 *S.Ct.* at 2183, 68 *L.Ed.*2d at 681.

In the same year as *Schad,* the Supreme Court, in *Metromedia, Inc. v. San Diego,* 453 *U.S.* 490, 101 *S.Ct.* 2882, 69 *L.Ed.*2d 800 (1981), dealt with the validity of statutory billboard prohibitions. *Metromedia* involved a San Diego ordinance that essentially prohibited "outdoor advertising display signs." Under the ordinance scheme, onsite commercial advertising was permitted, but other commercial advertising and noncommercial communications using billboards were prohibited unless included in one of twelve exceptions provided in the ordinance. *Id.* at 494–95, 101 *S.Ct.* at 2885–86, 69 *L.Ed.*2d at 806–07. Appellants were companies engaged in the outdoor advertising business in San Diego who owned a substantial number of billboards located in commercial and industrial zones within the city. While the billboards were used primarily for commercial advertising, they were also used to communicate a broad range of noncommercial social and political messages. The lower courts had upheld the ordinance based on their belief that the two purposes behind it, traffic safety and aesthetics, were within the City's legitimate interests. *Id.* at 497, 101 *S.Ct.* at 2887, 69 *L.Ed.*2d at 808. Thus the ordinance was perceived as a "proper application of municipal authority over zoning and land use for the purpose of promoting the public safety and welfare." *Id.* (quoting *Metromedia, Inc. v. City of San Diego,* 26 *Cal.*3d 848, 858, 610 *P.*2d 407, 411, 164 *Cal.Rptr.* 510, 514 (1980)).

The Supreme Court ruled that the ordinance was unconstitutional. In his plurality opinion, Justice White expressed the view that the ordinance, insofar as it regulated commercial speech, met constitutional guidelines established for determining governmental regulation of such speech,[5] *Metromedia, supra,*

---

[5]The plurality relied on the following four-part test for use in the commercial speech context:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise

453 *U.S.* at 512, 101 *S.Ct.* at 2895, 69 *L.Ed.*2d at 818, since the "common sense judgments of local lawmakers" on traffic safety and lack of a showing of an improper "ulterior motive" behind its esthetic judgments showed that the city's action did indeed directly advance these substantial interests. *Id.* at 509–11, 101 *S.Ct.* at 2893–94, 69 *L.Ed.*2d at 816–17. Nevertheless, the plurality struck down the ordinance because of its restrictive impact on non-commercial speech, which, due to numerous statutory exceptions, reached too intrusively into the realm of free speech by purporting to distinguish between kinds of protected speech by reference to their content. *Id.* at 513–15, 101 *S.Ct.* at 2895–96, 69 *L.Ed.*2d at 818–19. Lastly, the plurality rejected the City's argument that the ordinance was a reasonable "time, place and manner" restriction because adequate alternative channels were not available to parties wishing to express social or ideological views in an inexpensive and wide reaching manner. *Id.* at 515–17, 101 *S.Ct.* at 2896–97, 69 *L.Ed.*2d at 820.

This constitutional approach conforms to our own. One year prior to *Metromedia* and *Schad*, this Court in *State v. Miller, supra*, 83 *N.J.* 402, struck down a municipal sign ordinance as unconstitutional. In doing so we acknowledged that the preservation of aesthetics and property values was a legitimate goal of a municipal zoning ordinance. *Id.* at 409. Nevertheless, we ruled that ordinances seeking to further such a goal would be subject to strict constitutional scrutiny requiring that their regulatory restrictions be closely "tied to a compelling municipal interest a well as to the uses permitted in a given zone." *Id.* at 414. In finding in that case that this standard had not

---

protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. [*Metromedia, supra*, 453 *U.S.* at 507, 101 *S.Ct.* at 2892, 69 *L.Ed.* at 815 (quoting *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 *U.S.* 557, 563–66, 100 *S.Ct.* 2343, 65 *L.Ed.*2d 341, 349–51 (1980)).]

been satisfied, we reasoned that the ordinance in question [6] was too severe, amounting to a total ban on a form of political speech without providing an adequate alternative means of communicating. *Id.* at 413. Specifically, we concluded that "adequate alternative means of political communication" were not available where homeowners were precluded from putting signs and posters in their yards. *Ibid.*

In applying the test for determining the constitutional validity of an enactment that restricts or impinges on freedom of speech and expression, we are mindful that ordinarily legislative enactments are presumed to be valid and the burden to prove invalidity is a heavy one. *Velmohos v. Maren Eng'g Corp.,* 83 *N.J.* 282 (1980), *vacated,* 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1982); *Levitt & Sons, Inc. v. Division Against Discrimination, etc.,* 31 *N.J.* 514, appeal dismissed, 363 *U.S.* 418, 80 *S.Ct.* 1257, 4 *L.Ed.*2d 1515 (1960). Municipal ordinances, like statutes, enjoy this presumption of validity. *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 564 (1975); *Senate v. Mayor and Municipal Council of Clifton,* 66 *N.J.* 204, 219 (1974). Consistent with the judicial predisposition in favor of the validity of legislation, courts will readily impute a proper governmental purpose or interest as the object to be served by the enactment, and, if need be, infer an adequate factual basis to support legislative regulations, even in the absence of particular purposes or specific findings being expressed by the lawmakers. *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* at 564-65; *Burton v. Sills,* 53 *N.J.* 86, 95 (1968).

---

[6] The ordinance in *Miller* required permits for all signs exceeding six square feet and permitted only the following types of signs in residential zones: (1) decorative name and address plates; (2) "for sale" or "for rent" signs and signs identifying firms doing work on the premises; (3) signs maintained by the local, state or federal government; (4) identification signs for churches, schools, etc. The defendant in that case was convicted of violating the ordinance after he erected a four-by-eight-foot sign on his front yard carrying a message concerning a matter of public interest.

Nevertheless, if an enactment directly impinges on a constitutionally protected right, the presumption in favor of its validity disappears. Courts are far more demanding of clarity, specificity and restrictiveness with respect to legislative enactments that have a demonstrable impact on fundamental rights. *See State v. Cameron,* 100 *N.J.* 586, 592 (1985); *Paton v. LaPrade,* 469 *F.Supp.* 773, 778 (D.N.J.1978).

As we noted in *Zilinsky v. Zoning Bd. of Adjustment of Verona,* 105 *N.J.* 363 (1987), while, as a general rule, zoning ordinances do not have to articulate "tangible, specific objectives" in order to be valid, *id.* at 371, if an ordinance infringes on a fundamental right, "the burden is upon the municipality to articulate the objectives of [the] ... ordinance." *Ibid.* This articulation, we stated, need not be in the ordinance itself. "[R]ather, the municipality may offer testimony at a court hearing held to decide the constitutionality of the ordinance." *Ibid.; Riggs v. Long Beach Township, supra,* 109 *N.J.* at 615. Thus, an ordinance that substantially curtails freedom of expression clearly requires that the municipality shoulder the burden of proving its constitutional validity. The municipality must satisfactorily demonstrate a legitimate governmental interest that is to be served by the enactment and demonstrate a reasonable factual basis indicating that the regulation advances the governmental interest and is no more expansive than necessary in advancing that interest. *See Metromedia, Inc. v. San Diego, supra,* 453 *U.S.* 490, 101 *S.Ct.* 2882, 69 *L.Ed.*2d 800; *State v. Miller, supra,* 83 *N.J.* 402.

In this case the ordinance directly and drastically encroaches on a fundamental constitutional interest, freedom of speech and expression. It reasonably appears from the record that the curtailment effected by the ordinance would apply to both commercial forms of expression as well as noncommercial speech, which could include political expressions. *See Metromedia, Inc. v. San Diego, supra,* 453 *U.S.* 490, 101 *S.Ct.*

2882, 69 *L.Ed.*2d 800; *State v. Miller, supra,* 83 *N.J.* 402. Because noncommercial speech is implicated, the burden of overcoming the charge of constitutional invalidity is particularly strenuous. *State v. Miller, supra,* 83 *N.J.* 402; *Schad v. Borough of Mt. Ephraim, supra,* 452 *U.S.* 61, 101 *S.Ct.* 2176, 68 *L.Ed.*2d 671.

The ordinance fails to reveal either its particular governmental objectives or its factual underpinnings. As the Appellate Division noted, the record is almost completely devoid of any evidence concerning what interests of Stafford are served by the ordinance and the extent to which the ordinance has advanced those interests. Because the exercise of first amendment rights and freedom of speech are at stake, the municipality cannot seek refuge in a presumption of validity. It clearly had the burden to present and confirm those compelling legitimate governmental interests and a reasonable factual basis for its regulatory scheme in order to validate its legislative action. Its failure to do so is fatal.

We acknowledge that several possible interests can be hypothesized as objectives of the ordinance. One could be preserving aesthetics, *see Miller, supra,* 83 *N.J.* at 402; another, promoting traffic safety, *see, e.g., Metromedia, supra,* 453 *U.S.* at 507–09, 101 *S.Ct.* at 2892–93, 69 *L.Ed.*2d at 815; *Railway Express Agency, Inc. v. New York,* 336 *U.S.* 106, 69 *S.Ct.* 463, 93 *L.Ed.*2d 533 (1949). It is not the scope of a ban, or even the fact that it may be municipal-wide, that is determinative of its validity, but rather the existence of a demonstrable legitimate governmental objective genuinely served by such a ban. Thus, even if we were to assume that a legitimate interest justified some regulation of signs and billboards within Stafford, there has been no demonstration of the factual basis for this particular regulatory scheme, namely, a total municipal-wide ban. This clearly implicates an important prong in the test of constitutional validity: that this ordinance constituted the least re-

strictive means possible by which to serve such an interest.[7]

Finally, there has been no adequate showing that the ordinance left open alternative means of communication with the audience that was reached by the medium that is prohibited by the ordinance. *See Miller, supra,* 83 *N.J.* at 413. "While the First Amendment does not guarantee the right to employ every conceivable method of communication at all times and in all places, a restriction on expressive communication may be invalid if the remaining modes of communication are inadequate." *City Council of Los Angeles v. Taxpayers for Vincent,* 466 *U.S.* 789, 812, 104 *S.Ct.* 2118, 2132, 80 *L.Ed.*2d 772, 791 (1984) (citations omitted); *see Metromedia, Inc., supra,* 453 *U.S.* at 528–34, 101 *S.Ct.* at 2903–06, 69 *L.Ed.*2d at 828–31 (Brennan, J., concurring) (expressing dissatisfaction as to whether San Diego had actually proven its contentions regarding dangers found in billboards or shown that the solution constructed was drawn in a sufficiently narrow manner). Bell submits that he has occasionally used his billboards for noncommercial purposes and that they thus constitute a means of reaching the public for groups who could not afford other methods of getting their message across. While not required to disprove this, Stafford had the burden of showing that there were reasonably equivalent forms of communication available.

In sum, the Township of Stafford has not presented adequate evidence that demonstrates its ordinance furthers a particular, substantial government interest, and that its ordinance is suffi-

---

[7]On this record Stafford itself arguably has shown that a much more narrow ordinance could have been tailored, *i.e.* the current ordinance, prohibiting signs even if not interfering with traffic safety, replaces one that was much more directly related to that goal. Ordinance 84-35 (which has itself been superseded, *supra* at 390 n. 4) repealed Ordinance 77-22, which, as amended by Ordinance 78-19, had read:

*SIGNS*—No sign or billboard of any type shall be erected or permitted which obstructs driving vision, traffic signals, sight triangles, traffic direction, identification signs, or the sight obstruction of the traveling public to another sign or billboard on the same property or on a nearby property.

ciently narrow to further only that interest without unnecessarily restricting freedom of expression. Consequently, it has failed to demonstrate a basis for upholding the constitutionality of the ordinance.

## IV.

In view of Stafford's failure to justify the passage of such a broad and encompassing ordinance that substantially curtails freedom of speech and expression, we are constrained to declare it facially unconstitutional. *Zilinsky, supra,* 105 *N.J.* 363. This does not mean that Stafford is incapacitated from enacting an ordinance seeking to further a proper governmental objective and suitably restricted to meet that objective and satisfy the constitutional imperatives elucidated in *Schad, Metromedia,* and *Miller* in light of the problems pecular to that municipality. Our only determination here is that the ordinance in question facially infringes on a fundamental right without sufficient support in the record to justify its validity.

In light of this determination, we decline to address the other issues raised by the parties.

For these reasons, the judgment of the Appellate Division is therefore affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI, STEIN and HANDLER—7.

*Opposed* —None.